0408

Virginia B. MADDEN, as Executrix of the Estate of Frederick R. Madden, Respondent, v. Stacey E. COX, Roosevelt Cobb, and Long Manufacturing Company, Defendants, of whom Long Manufacturing Company is Appellant. Appeal of LONG MANUFACTURING COMPANY.

(328 S. E. (2d) 108)

Court of Appeals

576

*John P. Linton*, of *Sinkler, Gibbs & Simons*, Charleston, *for appellant.*

*K. Douglas Thornton* and *Kenneth W. Thornton, Jr.*, both of *Thornton & Mitchum*, Georgetown, *for respondent.*

Heard Nov. 14, 1984.

Decided March 6, 1985.

BELL, Judge:

This is a products liability action. Fred Madden, plaintiff's decedent, was seriously injured when a steel tobacco bin designed and manufactured by Long Manufacturing Company fell on him. He sued his employer, Stacey Cox, and a coworker, Roosevelt Cobb, for Cobb's alleged negligence and sued Long for an alleged design defect in the bin and breach of an alleged duty to warn. Madden subsequently died of causes unrelated to the accident; his executrix was substituted as plaintiff.

The negligence action against Cox and Cobb was dismissed at the close of Madden's case. The action against Long was submitted to the jury on negligence, breach of warranty, and strict tort theories of recovery. The jury returned a general verdict for Madden for $100,000 actual damages. From the denial of its motions for judgment *non obstante veredicto* and a new trial, Long appeals. We affirm.

On appeal from a jury verdict, our review is limited to determining if there is any evidence to support the verdict. *Willis v. Floyd Brace Co.*, 279 S. C. 458, 309 S. E. (2d) 295 (App. 1983). The evidence and all reasonable inferences arising therefrom must be viewed in the light most favorable to the respondent. *Buzhardt v. Cromer*, 272 S. C. 159, 249 S. E. (2d) 898 (1978); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bruce*, 325 S. E. (2d) 77 (S. C. App. 1985).

Long manufactures and markets a tobacco curing barn that contains eight bins. These bins are constructed of steel. They measure about nine and one half feet wide, three and one half feet deep, and six feet high. Each bin has wheels on the

bottom. When loaded with "green" tobacco a bin weighs about 2000 pounds. With cured tobacco it weighs about 1200 pounds. Bins are loaded while resting on the ground. Once loaded, the bin is lifted with an electric hoist, lowered onto a pair of rails, and rolled into the barn by pushing. Pushing and pulling are done manually.

The hoist runs on a rail suspended from the rafters of the shed. A steel bar the same width as the bin is attached to the hoist cable. At each end of the bar, suspended by a short length of chain, is a metal plate with a bolt through the bottom. At the top of each bin, in the center on either side, is a plate with an opening shaped like an inverted keyhole. To raise the bin, each bolt is placed in its keyhole and the hoist is activated. The head of the bolt, if it is completely engaged, seats into the keyhole when tension is placed on the chains. The bin can then be lifted. If the chains are slack, the bolt disengages from the keyhole.

Once the tobacco is cured, a bin is removed from the barn by rolling it to the end of the rails, engaging the bolts on each side of the bin, raising the bin about a foot above the rails, pulling the bin several feet away from the barn, and lowering it to the ground.

When the accident occurred, Fred Madden and Roosevelt Cobb was removing a bin from the barn for unloading. Cobb was operating the hoist and the bolt and chain on the left side of the bin. Madden pulled the bin out on the rails and engaged the bolt chain on the right side. He signalled "ready" and Cobb started the hoist. Madden then cried "stop" and the bin began to fall. He tried to get out of the way, but slipped on a piece of burlap lying on the floor. The bin fell on Madden and pinned him to the floor, causing severe multiple injuries.

For the purposes of this appeal, both Long and Madden agree the cause in fact of the accident was the disengagement of one or both of the bolts from the side of the bin.[1] Madden maintains the proximate cause of the disengagement was the

[1] Madden's action against Roosevelt Cobb alleged Cobb was negligent in failing to engage his bolt properly or in dropping the bin onto the rails causing the chains to go slack and the bolts to disengage. Stacey Cox's liability was based on respondent superior. Both these actions were dismissed at the close of Madden's case in chief and the appeal from that order has been abandoned. Hence, Long and Madden accept as the law of the case that no negligence was proved against Cobb.

negligent or defective design of the bolt and keyhole mechanism which rendered the bin unreasonably dangerous and unfit for ordinary use. He also argues the design of the bolt and keyhole mechanism created a propensity for partial engagement and constituted a dangerous condition Long should have warned against. Long, on the other hand, claims Madden consciously or negligently failed to engage his bolt properly and that this failure amounted to contributory negligence, product misuse, and assumption of the risk. Futhermore, Long alleges that since Madden knew of the danger of a partial engagement, it was not obliged to warn him of an obvious risk.

## I.

In a product liability action the plaintiff must establish three things, regardless of the theory on which he seeks recovery: (1) that he was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition unreasonably dangerous to the user. W. Prosser, Law of Torts 671-72 (4th ed. 1970); *cf.* Sections 15-73-10, 36-2-318, 36-2-715, Code of Laws of South Carolina, 1976; *Claytor v. General Motors Corp.*, 277 S. C. 259, 286 S. E. (2d) 129 (1982); *Logan v. Montgomery Ward & Co., Inc.*, 216 Va. 425, 219 S. E. (2d) 685 (1975). In this case, neither of the first two elements is disputed. Rather, Long maintains that even if a defect were proved, which it denies, Madden's own conduct proximately caused the accident.

## A.

A product can be defective because of a flaw in its design. Liability for a design defect may be based on negligence, strict tort, or warranty. *See Mickle v. Blackmon*, 252 S. C. 202, 166 S. E. (2d) 173, 42 A.L.R. (3d) 525 (1969); *Kennedy v. Custom Ice Equipment Co.*, 271 S. C. 171, 246 S. E. (2d) 176 (1978); *Elsasser v. American Motors Corp.*, 81 Mich. App. 379, 265 N. W. (2d) 339 (1978). In an action based on strict tort or warranty, plaintiff's case is complete when he has proved the product, as designed, was in a defective condition unreasonably dangerous to the user when it left the

control of the defendants, and the defect caused his injuries. *See* Code Section 15-73-10; *Logan v. Montgomery Ward & Co., Inc., supra.* Liability for negligence requires, in addition to the above, proof that the manufacturer breached its duty to exercise reasonable care to adopt a safe design. *See* Restatement (2d) Torts, Section 398 (1965). This burden may be met by showing that the manufacturer was aware of the danger and failed to take reasonable steps to correct it. *See Marchant v. Lorain Division of Koehring,* 272 S. C. 243, 251 S. E. (2d) 189 (1979) *(Marchant II).*

Madden presented evidence at trial that the bolt and ■■ keyhole device used to connect the hoist bar to the bin was defective in its design. Dr. Melvin Richardson, Madden's expert witness, testified that Long's design had no safeguard against partial engagement. He also testified that a simple latching device could guard against partial engagement. Vance Long, Long's vice president, testified that field testing had disclosed the bin could be lifted even when the bolt was only partially engaged. Dr. Harold Hawkins, Long's expert, testified that an unsafe condition would exist if a bin could be lifted when the bolt was only partially engaged.

Viewing this evidence in the light most favorable to Madden, the jury could have found the lifting mechanism was defectively designed and unreasonably dangerous in ordinary use. The evidence of Long's awareness of the risk, and its failure to take precautions against it, was also sufficient for the jury to find negligence.

### B.

Long claims the trial judge erred in refusing at the close of the evidence to strike portions of the complaint dealing with failure to warn. To support its argument, Long points out that each witness testified he knew if the bolts were only partially engaged the bin could fall. From this testimony, Long argues the dangerous condition was obvious to the user of the bins.

The crucial question regarding duty to warn was not ■■ whether it was obvious the bin could fall if the bolts were not engaged, but whether the risk of partial engagement of the bolts was so obvious as to require no warning. No witness testified he was aware of the risk of partial engagement created by Long's design of the bolt and keyhole mechanism. Whether the general knowledge Fred Madden

and his coworkers had gained from their experience was sufficient to overcome Long's duty to warn them of the danger was a question for the jury. *Marchant II, supra.*

Long also asserts the trial judge erred when he refused Long's request to charge a manufacturer has no duty to warn of a danger that is open and obvious. There was no testimony that the particular danger posed by the bolt and keyhole mechanism was open and obvious. An instruction which tenders an issue not supported by the evidence is properly refused. *Quality Concrete Products v. Thomason,* 253 S. C. 579, 172 S. E. (2d) 297 (1970). Furthermore, none of the cases Long cites to support the requested charge is apposite to this case. *Marchant v. Mitchell Distributing Co.,* 270 S. C. 29, 240 S. E. (2d) 511 (1977) (*Marchant I*), treats the liability of a distributor for negligently failing to warn; the issue of a manufacturer's similar liability was held to be a jury question in *Marchant II, supra.* Both *Young v. Tide Craft, Inc.,* 270 S. C. 453, 242 S. E. (2d) 671, 1 A.L.R. 4th 394 (1978), and *Claytor v. General Motors Corp.,* 277 S. C. 259, 286 S. E. (2d) 129 (1982), involve the intervening negligence of third parties as the sole proximate cause of the injuries sustained by the plaintiffs. We find no error in the refusal to charge Long's request.

## C.

Long argues it should have been granted a directed verdict or judgment *non obstante veredicto* because the evidence established, as a matter of law, that Fred Madden was guilty of contributory negligence, assumption of the risk, and product misuse. Specifically, Long claims the only inference to be drawn from the evidence is that the proximate cause of the accident was Madden's failure to engage his bolt completely.

Long introduced Madden's deposition. In it, Madden stated he had checked his bolt to see it was in place. This evidence directly contradicted Long's allegations and created a jury question as to Madden's conduct. Submission of this issue to the jury was proper.

## II.

Long also urges error in admitting the testimony of two expert witnesses.

## A.

Madden presented testimoy of Dr. Franklin O'Rourke, an orthopedic trauma specialist who treated Fred Madden's injuries. Over Long's objection O'Rourke was permitted to relate Fred Madden's account of the accident as it bore upon the doctor's diagnosis and treatment.

Long now concedes the admissibility of this testimony under *Gentry v. Watkins Carolina Trucking Co.*, 249 S. C. 316, 154 S. E. (2d) 112, 37 A.L.R. (3d) 766 (1967). It also acknowledges the judge's cautionary instruction to the jury that the testimony be considered only as the basis of O'Rourke's medical opinion. However, Long contends, Madden's subsequent references to the testimony resulted in "obvious" prejudice, requiring a new trial.

When objection is timely made to improper remarks of counsel, the correct course for the trial judge is to rule on the objection, to instruct counsel to desist from making improper remarks, and to charge the jury to disregard the statements when reaching their verdict. *Hubbard v. Rowe*, 192 S. C. 12, 5 S. E. (2d) 187 (1939). A motion for a new trial based on improper argument of counsel is addressed to the discretion of the trial judge and his ruling will not be disturbed unless there has been an abuse of that discretion. *Shearer v. DeShon*, 240 S. C. 472, 126 S. E. (2d) 514 (1962).

In each instance when counsel for Madden attempted to use O'Rourke's testimony as substantive evidence, either (1) an objection to his question was sustained, (2) he was admonished against referring to the testimony, or (3) the jury was instructed that the testimony was not substantive evidence of how the accident occurred. We detect no abuse of discretion. In any event, we fail to see how Long was prejudiced, since the dismissal of Cox and Cobb admittedly refuted O'Rourke's version of how the accident happened as a matter of law. *See* n. 1, *supra; cf. McGaha v. Mosley*, 322 S. E. (2d) 461 (S. C. App. 1984).

## B.

Dr. Melvin Richardson, an engineering professor from Clemson University, testified as a design expert for Madden. Long objected to Richardson's qualifications as an expert witness and to a hypothetical question posed to the witness.

Qualification of a witness as an expert is within the trial judge's discretion. *Prince v. Associated Petroleum Carriers*, 262 S. C. 358, 204 S. E. (2d) 575 (1974); *South Carolina Dept. of Social Services v. Bacot*, 280 S. C. 485, 313 S. E. (2d) 45 (App. 1984). Long's counsel subjected Dr. Richardson to extensive *voir dire* concerning his credentials, experience, and the basis of his opinion. We find no abuse of discretion in his qualification as an expert.

Once he was qualified, counsel again explored the adequacy of Dr. Richardson's knowledge on cross examination, but this question went to the weight of his testimony, not its admissibility. *See Hill v. Carolina Power & Light Co.*, 204 S. C. 83, 28 S. E. (2d) 545 (1943); *O'Kelley v. Mutual Life Ins. Co. of New York*, 197 S. C. 109, 14 S. E. (2d) 582 (1941). It was for the jury to decide what weight, if any, to give to Dr. Richardson's testimony. This Court cannot judge the credibility or weight of the testimony on appeal. *Gibbs v. Atlantic Coast Line R. Co.*, 221 S. C. 243, 70 S. E. (2d) 238 (1952).

Long timely objected to a hypothetical question posed to Dr. Richardson, because it failed to include the fact, as testified by Patrick Madden, that the chains were taut before the bin fell. For expert opinion to be admissible and of probative value, it is not necessary that every detail be included in the hypothetical. It is sufficient that the question contain substantially all the material facts required to form an opinion. *Chapman v. Foremost Dairies, Inc.*, 249 S. C. 438, 154 S. E. (2d) 845 (1967). In this case, the hypothetical question fell well within the parameters prescribed by *Chapman*. On cross examination, Long was permitted to alter the hypothetical to suit its view of the facts. We find no error in admitting Richardson's answer to the hypothetical question.

### III.

Long asserts the trial judge erred in denying it motions to elect between causes of action and for a special verdict. Because these motions were refused, Long argues, the jury charge included so many issues that it was incomprehensible. Furthermore, Long says, the general verdict "renders this court's constitutional duty to review for errors of law impossible."

Counsel for Long, in making the motion elect, stated, "The basis for my motion is that he is seeking punitive damage [*sic*]. . . . [H]e would have to elect because the jury couldn't possibly stack the damages." The jury returned a verdict of $100,000 in actual damages, some $200,000 less than the complaint prayed, and no punitive damages. Since the evil sought to be averted by Long's motion never materialized, the issue is moot. *Cf. New Foundation Baptist Church v. Davis*, 257 S. C. 443, 186 S. E. (2d) 247 (1972) (where no punitive damages have been awarded, question of whether or not trial judge properly submitted that issue becomes moot).

Long's motion for special verdicts was addressed to the sound discretion of the trial judge. Section 15-33-30, Code of Laws of South Carolina, 1976; *Smoak v. Liebherr-America, Inc.*, 281 S. C. 420, 315 S. E. (2d) 116 (1984). We are persuaded the jury was capable of properly evaluating the evidence as to each theory of liability presented. Likewise, we ourselves have no difficulty in reviewing the record to determine if there is evidence to support the verdict on each cause of action. It was not error to refuse the request for special verdicts.

For similar reasons, we reject the argument that the jury charge was misleading, confusing, or incomprehensible. A jury charge is proper if it is confined to the issues made by the pleading and supported by the evidence. *Mail Mart, Inc. v. Action Marketing Consultants, Inc.*, 281 S. C. 167, 314 S. E. (2d) 351 (App. 1984). We have reviewed the charge given to the jury. It embraces each theory of recovery advanced by Madden and every defense asserted by Long. While the charge is lengthy and somewhat complex, considered in its entirety, we find it intelligible and free from error.

## IV.

Long's final contention is that the verdict of $100,000 was a product of passion, prejudice, or caprice and is without evidentiary support. This argument is without merit.

The record reflects Fred Madden suffered excruicating pain as a result of this accident. His wife and son and both treating physicians testified to the physical agony Madden endured.

The parties stipulated Madden's medical expenses were approximately $13,500. Between the time of his return home from the hospital and his death, he was unable to walk without assistance. Because of his injuries he had to forego the simple pleasures he enjoyed before the accidents.

On the basis of this evidence we cannot say the jury's award lacked factual support, or was the product of passion, prejudice, or caprice. *Cf. Gasque v. Heublein, Inc.*, 281 S. C. 278, 315 S. E. (2d) 556 (App. 1984).

For the foregoing reasons, the judgment of the circuit court is

Affirmed.

SANDERS, C. J.,and GARDNER, J., concur.