1783

Charletta R. LUCAS, Respondent v. SARA LEE CORPORATION, Appellant.

(415 S.E. (2d) 837)

Court of Appeals

*John B. McCutcheon, Jr.,* and *Mary Ruth M. Baxter* of *Mc-Cutcheon, McCutcheon & Baxter,* Conway, *for appellant.*

*Henrietta U. Golding* and *David B. Miller* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for respondent.*

Heard Jan. 22, 1992.

Decided Mar. 9, 1992.

CURETON, Judge:

This is a negligence case arising out of an automobile accident. Charletta Lucas was driving her vehicle in March of 1988 when she was struck from the rear by a vehicle driven by an agent of the defendant, Sara Lee Corporation. The jury returned a verdict in Lucas's favor in the amount of $400,000 actual damages. Sara Lee appeals contending the trial court

erred in failing to grant its motion for a new trial based upon certain evidentiary rulings and the excessiveness of the verdict. We affirm.

## I.

The first evidentiary rulings concern the testimony of two physicians. The trial court excluded certain portions of their testimony. Sara Lee contends this was error.

One of the issues in the case was the causal relationship between Mrs. Lucas's lower back injury and the automobile accident. Sara Lee did not strongly contest Mrs. Lucas's claim she suffered an injury to her neck in the accident as she was treated for this injury shortly thereafter. However, approximately one year after the accident, Mrs. Lucas had an operation to remove a disc from her lower back. This caused her to incur additional medical expenses, lose more time from work, and has led to additional physical limitations. Sara Lee contends the accident and the disc problem are not related.

### (a)

Dr. Philip Fifield, a family practice physician, first saw Mrs. Lucas on April 8, 1988. She related to him a history of being involved in an automobile accident approximately two weeks prior to the visit. She sought treatment for pain and stiffness in the left side of her neck. Dr. Fifield testified he had no recollection of Mrs. Lucas complaining of pain in the lower back and his records did not reflect such a complaint. Mrs. Lucas testified she did mention pain in her lower back but at the time the main area of pain was in her neck. Dr. Fifield did not examine her lower back. He treated her for the neck problem and then referred her to an orthopedic surgeon, Dr. Mason Ahearn.

Dr. Fifield next saw Mrs. Lucas in March, 1989. She complained of right lower back pain at the time. He testified she gave a history of being involved in transferring patients on her job as a registered nurse at a hospital. According to Dr. Fifield, Mrs. Lucas stated the pain began after she arrived home from her shift at the hospital. She did not recall a particular act which immediately produced pain. His diagnosis was a lumbar strain with muscle spasm. An X-ray of the lumbar spine revealed a narrowing of the L5-S1 disc space. This was the last time he saw her.

During the testimony, Dr. Fifield was questioned about the lack of complaint of lower back pain in 1988. He testified he rendered no diagnosis regarding her lumbar spine in 1988 because she made no complaint which would have caused him to conduct a physical examination of that area. The trial court then excluded the following question and answer:

> Q. And today, sir, looking at these records before you, do you have an opinion, to a reasonable degree of medical certainty, as to whether a bulging lumbar disc or a ruptured disc existed at that time?
>
> A. To my knowledge, such a condition did not exist at that time.

We note this is the only portion of the testimony excluded by the court. Dr. Fifield testified about the usual symptoms associated with a disc injury including pain in the lower back. He stated the 1989 complaints could be related to the history of transferring patients at work.

The trial court excluded the question and answer because Dr. Fifield testified he made no examination and diagnosis of the lower back in 1988. The court held it would be improper under those circumstances for him to testify a condition did not exist. The admission or exclusion of evidence is a matter within the sound discretion of the trial judge. For an appellate court to reverse the trial court for erroneously excluding evidence the appellant must show both the error of the ruling and prejudice resulting therefrom. *First State Savings and Loan v. Phelps*, 299 S.C. 441, 385 S.E. (2d) 821 (1989). Whether or not this testimony should have been excluded, we see no resulting prejudice from the exclusion. The point was already made in other testimony by Dr. Fifield concerning the lack of lower back pain complaints during 1988 and the symptoms he would expect to see if an injury of that type existed. We find no reversible error.

(b)

Sara Lee also offered at trial the deposition testimony of Dr. George Dawson, an orthopedic surgeon. Dr. Dawson did not treat Mrs. Lucas but was asked to examine her medical records in order to testify as a non-treating expert witness on behalf of Sara Lee. Sara Lee wanted to use his testimony to

refute the contention that Mrs. Lucas sustained a lower back injury in the accident.

During the deposition, Dr. Lawson testified he was familiar with ruptured and bulging disc problems. He would expect a patient with such a problem to complain of back pain. He had examined Mrs. Lucas's medical records from Dr. Fifield, Dr. Ahearn, and the physical therapist. Dr. Ahearn was the orthopedic surgeon Mrs. Lucas saw on referral from Dr. Fifield. In reviewing the medical records, Dr. Dawson testified he found only one complaint of minor low back pain contained in the April 20, 1988, note of Dr. Ahearn. He saw no other indication of such complaints until March 1989.

The trial court excluded the following question and answer from Dr. Dawson's testimony:

> Q: Doctor, do you have an opinion to a reasonable degree of medical certainty as to whether Mrs. Lucas suffered a bulging disc at L-5, S-1 as a result of an automobile accident on March 25, 1988?
> A: If she subsequently had an operation for a ruptured disc, I don't think the ruptured disc occurred at the time of the car wreck. She was not complaining of consistent back or leg pain at the time.

This question came at the end of a long discourse in which counsel for Sara Lee sought to elicit the opinion of Dr. Dawson and counsel for Mrs. Lucas objected because of the manner in which the question was posed and the failure to include certain facts. The trial court excluded the ultimate question and answer primarily because the judge found the opinion was not given in response to a proper hypothetical.

It would not serve a useful purpose to detail the several pages in the record regarding this matter. The trial court carefully examined the record and concluded Dr. Lawson's response should be excluded because he did not testify in response to a proper hypothetical question.[1] When a witness testifies in response to a hypothetical question, it is not necessary that every detail be included in the hypothetical. It is sufficient that the question contain substantially all

---

[1] This case was tried in March of 1990 before the date of the amendment to Rule 43(m), SCRCP, regarding expert witness testimony.

the material facts required to form an opinion. *Chapman v. Foremost Dairies Inc.*, 249 S.C. 438, 154 S.E. (2d) 845 (1967); *Madden v. Cox*, 284 S.C. 574, 328 S.E. (2d) 108 (Ct. App. 1985), *appeal dismissed,* 286 S.C. 127, 332 S.E. (2d) 102 (1985). We find no error in the exclusion of the question and answer. We additionally find no prejudice. Dr. Dawson had testified about his professional experience with disc problems and the complaints he would expect a person to voice with such an injury. He had also testified the records did not indicate such complaints from Mrs. Lucas other than one brief note. We believe the substance of his testimony was reasonably inferable even without the specific excluded testimony.

## II.

Sara Lee also asserts the court erred in admitting testimony concerning the inability of Mrs. Lucas to continue her job as a hospital nurse and the resulting loss of earning capacity.[2] We find no error.

At the time of the accident, Mrs. Lucas was employed as a registered nurse at the Georgetown Hospital. The duties of a general duty nurse at the hospital included the lifting and turning of patients. There was testimony from her treating physicians that Mrs. Lucas was restricted in her ability to lift certain weights due to her back surgery. Sara Lee contended at trial Mrs. Lucas was not disabled and could work in a hospital in some nursing capacity.

### (a)

During her direct examination, Mrs. Lucas was asked about her ability to continue working as a general duty hospital nurse. Counsel for Sara Lee objected on the ground Mrs. Lucas was not qualified to testify about disability. The trial judge held Mrs. Lucas could testify whether or not she thought she could return to general duty type hospital nursing and it would be a matter for the jury to weigh in assessing the facts of the case. Mrs. Lucas responded she did not feel she could return to work as a general duty hospital nurse

---

[2] The thrust of Lucas's evidence on this issue was that she was only suited for office type nursing jobs that did not involve patient lifting and these jobs paid less than hospital nursing jobs.

but she hoped to be able to work in a less demanding area such as a physician's office.

We find no error in the admission of this testimony. Mrs. Lucas had worked as a hospital nurse before the accident. She knew the physical requirements of the job. She also knew her physical condition and limitations. Her testimony fell within the range of common experience and observation. *See Thompson v. Aetna Life Ins. Co. of Hartford,* 177 S.C. 120, 180 S.E. 880 (1935). The jury could assess the credibility of her testimony and the weight to be given to it.

### (b)

One witness for Mrs. Lucas was a registered nurse who was an assistant professor of nursing at a local college. This witness also served as a career advisor at the college. She was asked about the difference in compensation between a hospital nurse and a physician's office nurse. Sara Lee objected on the ground her testimony was based upon hearsay and was therefore inadmissible. The court accepted her as an expert witness and allowed the testimony. We find no error.

As part of the basis of her opinion, the witness testified she had access through her job to various publications, a 1987 study, surveys, and texts which contained information regarding compensation of nurses. She also worked part-time in area hospitals and had contact with a number of nurses through her position as a career advisor. In response to a question from the court, she indicated she was personally aware through her own inquiries about the different salaries.

The qualification of a witness as an expert and admissibility of his testimony are matters largely within the discretion of the trial court. *Honea v. Prior,* 295 S.C. 526, 369 S.E. (2d) 846 (Ct. App. 1988); *Bonaparte v. Floyd,* 291 S.C. 427, 354 S.E. (2d) 40 (Ct. App. 1987). Expert testimony may be based partially on information received from other sources if such facts and data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. *Campbell v. Paschal,* 290 S.C. 1, 347 S.E. (2d) 892 (Ct. App. 1986); *Howle v. PYA/Monarch Inc.,* 288 S.C. 586, 344 S.E. (2d) 157 (Ct. App. 1986). We find no abuse of discretion by the trial court in the admission of the testimony.

### (c)

Mrs. Lucas presented the testimony of a certified public accountant as her economic loss expert. He analyzed the wage difference between a hospital nurse and a physician's office nurse. He then testified to the present value of the diminished earning capacity based upon this differential. Sara Lee objected to his testimony on the ground of speculation because there was no factual basis in the record to establish Mrs. Lucas would not be able to return to work as a hospital nurse in the future. The trial court allowed the testimony. We affirm.

The record indicates Mrs. Lucas worked as a hospital nurse before the accident. She testified about the physical requirements of the position. She also testified about her physical limitations after the surgery. There was some testimony about other administrative nursing positions in the hospital but most required additional training as well as the ability to work as a floor nurse if needed. Sara Lee is arguing absolute certainty is required to establish whether or not Mrs. Lucas could return to her previous employment in the hospital. We do not agree. Although Sara Lee did not present its own witnesses on this subject, it did cross examine all of Mrs. Lucas's witnesses about other hospital employment opportunities and the subject of a nursing shortage. The jury was competent to assess the weight of the evidence including the testimony about the future employment prospects of Mrs. Lucas. The testimony of the accountant had a foundation in the record and there was no error in its admission.

### III.

The final contention of Sara Lee is the trial court erred in failing to grant a new trial because the verdict was excessive. The argument is based upon the evidentiary issues previously discussed. Given our disposition of those matters, we find no error.

Affirmed.

GARDNER and BELL, JJ., concur.