718 S.E.2d 220

**5 STAR, INC., Respondent,**

v.

**FORD MOTOR COMPANY, Appellant.**

No. 4862.

Court of Appeals of South Carolina.

Heard April 5, 2011.
Decided Aug. 10, 2011.
Rehearing Denied Dec. 14, 2011.

Curtis L. Ott and David C. Marshall, both of Columbia, for Appellant.

Thomas R. Goldstein, of Charleston, for Respondent.

FEW, C.J.

5 Star, Inc. filed this product liability action against Ford Motor Company alleging that negligence in the design of a speed control deactivation switch caused a fire that burned a

1996 Ford F–250 pickup truck.[1] However, 5 Star presented no expert witness to testify that Ford was negligent in designing the switch, nor any other evidence that Ford breached its duty of care at the time the switch was designed and manufactured. We hold the trial court erred in denying Ford's motion for a directed verdict. We reverse.

## I. Facts and Procedural History

5 Star is a lawn maintenance and pressure washing company owned by Stan Shelby. In February of 2005, 5 Star bought a 1996 Ford F–250 pickup truck with 227,000 miles for $1,500.00. On September 24, 2005, Shelby parked the truck for the weekend in 5 Star's North Charleston warehouse, which also housed tractors, trailers, lawn mowers, and other equipment related to the business. When Shelby returned two days later he discovered that a fire had occurred. The truck was destroyed, and the building and several other pieces of equipment were severely damaged. There were no personal injuries. Before suit was filed and before Ford was given an opportunity to inspect the truck, Shelby had the truck towed from his property and crushed.[2]

At trial, 5 Star called five witnesses. Benjamin Norris, the City of North Charleston Fire Department's Chief Fire Investigator, testified that when he arrived at 5 Star's warehouse he observed "a Ford pickup truck sitting in the middle of the building. It was extensively burned." Norris testified that the most significant damage to the building was directly above the truck's engine compartment, which indicated to him that

---

1. 5 Star made no claim for strict liability or breach of warranty.

2. Ford asked the circuit court to dismiss the case as a sanction for spoliation of evidence based on the destruction of the truck. The circuit court declined to dismiss the case but charged the jury that it could draw a negative inference from the plaintiff's actions. Ford appeals this ruling. While we are troubled by the intentional destruction of the truck under any circumstances, particularly without notice to Ford and before Ford was given a chance to inspect it, we do not reach the question of whether the circuit court abused its discretion in ruling on the motion. We also do not reach two other arguments Ford raises on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing that an appellate court need not address remaining issues when resolution of one issue is dispositive).

the engine compartment was the area of origin of the fire. Norris explained, "I believe the cause of the fire was a defective speed control deactivation switch because in that area that's the only thing that will produce heat at that time." Norris did not testify to any facts or opinions related to Ford's conduct in the original design of the truck or any of its component parts.

Leonard Greene testified as an expert for 5 Star in fire cause and origin and electrical engineering. Greene explained that burn patterns shown by a photograph of the pickup truck indicated that the "origin of the fire appears to be right where the switch would have normally been present. And in my opinion, the cause of the fire was a malfunction of the switch." Greene testified "it's a bad design" and explained that "it would have been inherently safer to have designed it so that it only had power on it when the ignition was on." However, Greene did not testify to any facts or opinions related to Ford's conduct in the original design of the truck or any of its component parts.

5 Star's other three witnesses included a captain in the North Charleston Fire Department, who testified as to his observations at the scene of the fire, and Shelby, who testified to his observations and to the damages caused by the fire. Neither testified to any facts or opinions related to Ford's conduct in the original design of the truck or any of its component parts. The other witness called by 5 Star was John Olson, a representative of Ford, whose testimony is discussed below.

Ford made a motion for a directed verdict at the conclusion of the plaintiff's case and renewed it at the close of all evidence. The trial court denied the motion and submitted the case to the jury exclusively on the claim for negligent design. The jury returned a verdict in favor of 5 Star for $41,000.00 in actual damages.

## II. Proving Negligent Design

 " 'When we review a trial judge's ... denial of a motion for directed verdict or JNOV, we reverse only when there is no evidence to support the ruling or when the ruling is governed by an error of law.' " *Watson v. Ford Motor Co.*, 389

S.C. 434, 455, 699 S.E.2d 169, 180 (2010) (quoting *Austin v. Stokes–Craven Holding Corp.*, 387 S.C. 22, 42, 691 S.E.2d 135, 145 (2010)). In this case, there is no evidence that Ford was negligent in the design of the speed control deactivation switch and thus, no evidence to support the ruling denying Ford's motion for a directed verdict and for JNOV. Accordingly, we reverse the jury verdict in favor of 5 Star and enter judgment in favor of Ford Motor Company.

■ In 1985, this court held that in addition to the three elements common to all product liability claims, a plaintiff asserting a negligent design theory of recovery must prove that the defendant manufacturer's conduct in designing the product breached its duty of due care. *Madden v. Cox*, 284 S.C. 574, 579–80, 328 S.E.2d 108, 112 (Ct.App.1985). Since at least that time, a plaintiff has been required to prove four elements in order to recover for negligent design in a product liability case: (1) he was harmed by the product; (2) the product was in essentially the same condition as when it left the defendant; (3) the harm occurred because the product was in a defective condition unreasonably dangerous to the user; and (4) the manufacturer breached its duty to exercise reasonable care in designing the product. *Id.; see also Branham v. Ford Motor Co.*, 390 S.C. 203, 210, 701 S.E.2d 5, 8–9 (2010); *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 15, 677 S.E.2d 612, 614–15 (Ct.App.2009). 5 Star was required to present some evidence of each of the four elements above in order survive Ford's motion for a directed verdict. On appeal, Ford contends 5 Star presented no evidence as to elements two and four.

■ We focus our analysis on the fourth element. In order to satisfy this element in a negligent design case, the plaintiff must prove negligent conduct on the part of the defendant in the design of the product at or before the time of manufacture. *Branham*, 390 S.C. at 227, 701 S.E.2d at 17 ("[T]he judgment and ultimate decision of the manufacturer must be evaluated based on what was known or 'reasonably attainable' at the time of manufacture." (citations omitted)); *see also Madden*, 284 S.C. at 580, 328 S.E.2d at 112 ("This burden may be met by showing that the manufacturer was aware of the danger and failed to take reasonable steps to

correct it."). In *Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 539, 462 S.E.2d 321, 326 (Ct.App.1995), this court explained the requirements of the fourth element as follows:

> [U]nder a negligence theory [of recovery], the plaintiff bears the additional burden of demonstrating the defendant ... failed to exercise due care in some respect, and, unlike strict liability, the focus is on the conduct of the ... manufacturer, and liability is determined according to fault.

"The focus [in a negligence action] is upon the action of the defendant. The mere fact a product malfunctions does not demonstrate the manufacturer's negligence...." *Sunvillas Homeowners Ass'n v. Square D Co.,* 301 S.C. 330, 333, 391 S.E.2d 868, 870 (Ct.App.1990).

In this case, Ford concedes the switch was defective. However, as we explained in the cases cited above, the focus of the fourth element is on the defendant's conduct, not on the product. Therefore, mere evidence of defect is not sufficient to satisfy 5 Star's burden of proof as to this element. Rather, 5 Star was obligated to offer evidence that Ford was negligent in its conduct. 5 Star not only failed to present any evidence that Ford's conduct in designing the switch was negligent, 5 Star failed to present any evidence of Ford's conduct whatsoever. Neither Norris nor Greene testified to a single fact or event at or before the manufacture of this truck and this switch. Neither witness was qualified as an expert in automotive design or any other area of expertise that would enable them to offer opinions as to whether Ford's conduct was negligent.

The only other witness who could have testified as to Ford's conduct in designing the truck or the switch was John Olson, a design analysis engineer with Ford Motor Company. The trial court qualified Olson as an expert, but only in the field of "fire cause and origin and in particular as to vehicles." Olson offered no facts or opinions related to Ford's conduct in the original design of the truck or any of its component parts. Counsel for 5 Star asked Olson about his investigation of the fire, how the speed control deactivation switch operates, and other subjects that have no relation to Ford's conduct in designing the switch. However, counsel did not ask Olson a single question about the process of designing the switch,

about what Ford knew or did not know at the time regarding its safety, or about anything that occurred in 1996 or earlier. The only mention in the entire trial of what Ford knew or did not know about the switch before 1996 was Greene's admission that he knew nothing on the subject.

The limited evidentiary presentation by 5 Star allows us only a scant understanding of the design and operation of a speed control deactivation switch. From what little testimony there is in this record, however, we are able to determine that the switch serves as a mechanism to deactivate the cruise control when the driver presses the brake pedal. The switch is wired into the brake light circuit, which, for safety reasons, must remain energized at all times. Keeping this circuit energized allows the brake lights to be illuminated by pressing the brake pedal even when the vehicle is turned off. The switch is "redundant," meaning it serves as a back-up in case the primary deactivation switch malfunctions. The allegedly defective quality of the switch is that it allows brake fluid, which is flammable, to remain in dangerous proximity to the energized electrical circuit, separated only by a thin membrane. Greene's explanation of how this can start a fire was "the protective device [apparently a fuse] is not coordinated with the switch. The switch is rated for two amperes. The protective device is rated for 15 amperes. So the switch can really overheat and start a fire before the 15-ampere fuse would ever blow."

▪ In order to gain more than this limited understanding of the operation of the switch, and in particular, in order to understand whether 5 Star met its burden of proving that the design of the switch was negligent in 1996, a jury, the trial court, and this court on appeal would need the benefit of expertise in several subjects that are not included in this record. In other words, this is precisely the type of "design defect claim" our supreme court recently stated "necessarily involve[s] sophisticated issues of engineering, technical science, and other complex concepts that are quintessentially beyond the ken of a lay person." *Watson,* 389 S.C. at 444, 699 S.E.2d at 174. When the plaintiff in a product liability case bears the burden of proof as to any issue within a subject matter beyond the common knowledge and understanding of lay jurors, that plaintiff must present expert witness testimony in order to meet its burden. 389 S.C. at 445, 699 S.E.2d at

175 ("Expert testimony ... is necessary in cases in which the subject matter falls outside the realm of ordinary lay knowledge.").[3] Because 5 Star failed to present any expert testimony on the design of the speed control deactivation switch and whether the design was negligent in 1996, the trial court erred in not directing a verdict in favor of Ford.[4]

**REVERSED.**

THOMAS and KONDUROS, JJ., concur.

---

**3.** We recognize that *Watson* was decided two years after the trial of this case. However, the requirement of presenting expert testimony to meet the burden of proof on subjects beyond the knowledge and understanding of lay jurors is by no means new. *See, e.g., Green v. Lilliewood*, 272 S.C. 186, 192, 249 S.E.2d 910, 913 (1978) (holding that unless the subject is a matter of common knowledge, expert testimony is required to establish that a defendant failed to conform to a required standard of care in a medical malpractice case); *see also Kemmerlin v. Wingate*, 274 S.C. 62, 65, 261 S.E.2d 50, 51 (1979) (holding in public accounting malpractice action: "Since this is an area beyond the realm of ordinary lay knowledge, expert testimony usually will be necessary to establish both the standard of care and the defendant's departure therefrom.").

**4.** In *Duncan v. Ford Motor Co.*, 385 S.C. 119, 128, 682 S.E.2d 877, 881 (Ct.App.2009), we affirmed a jury verdict that Ford was negligent in the design of a speed control deactivation switch in a 2000 Ford Expedition. However, this case is distinguishable because the plaintiff in *Duncan* presented expert testimony that Ford was aware of the defect at the time of manufacture and Ford breached its duty to exercise reasonable care. 385 S.C. at 129–30, 682 S.E.2d at 882.