19479

Danny STEELE, by His Guardian *ad Litem*, Respondent, v. LYNCHES RIVER ELECTRIC COOPERATIVE, INC., Appellant.

(191 S. E. (2d) 253)

240

*Messrs. Robert R. Carpenter* and *Forrest C. Wilkerson,* of *Roddey, Sumwalt & Carpenter,* Rock Hill, *for Appellant,*

*Messrs. D. Glenn Yarborough* and *Berry Mobely,* of Lancaster, *for Respondent,*

August 31, 1972.

LEWIS, Justice:

This appeal is from a judgment recovered by respondent for injuries sustained by him when he came in contact with one of appellant's electric wires. The exceptions challange the sufficiency of the evidence to sustain the judgment, charging that the trial judge erred in refusing appellant's motion for a directed verdict upon the grounds (1) that the evidence failed to show any actionable negligence on appellant's part and (2) that if there was actionable negligence, respondent was barred of recovery by his own contributory negligence.

Since we have concluded that respondent, under the evidence, was guilty of contributory negligence as a matter of law, we only need to consider that question. The pleadings

raised no issue of recklessness, and, therefore, simple negligence on respondent's part would bar him of recovery.

Respondent was injured near an abandoned house in a rural area of Lancaster County. The house was owned by an uncle and had been unoccupied for about six or seven years. When last occupied, the house was supplied with electricity by appellant. According to appellant's testimony service to the house was discontinued in 1963. Access to the house was over a dirt road and was supplied with electric current through wires running from the house to a pole located near the road. Apparently, when service was discontinued in 1963, the wires from the house to the pole were left in place. However, at sometime, not disclosed by the record, someone had cut the wires loose from the house and the pole, leaving ends of the wires hanging from the meter base at the house and from the pole near the road. The wires were left dangling at the pole, as estimated by the witnesses, somewhere between "a little better than head high" and ten feet above the ground. There was a fence post located in close proximity to the pole, to which was attached a three-strand barbed wire fence appproximately waist high.

On November 25, 1969, in the daytime, respondent and his older brother went to the above premises, in the older brother's car, for the purpose of determining whether the location would be suitable for the operation of an automobile repair business. When they started to leave, the automobile would not start, and respondent's brother asked him to find a small piece of wire to use in cross-wiring the ignition. Respondent's injury was sustained while he was so engaged.

Respondent had no recollection of what happened and relied upon the testimony of his older brother, the only eye witness. The brother testified that respondent received his injury when he stood upon the barbed wire fence and attempted to cut a piece of wire from one of the wires dangling from the pole. His testimony on direct examination, as to how the injuries were received was as follows:

"Q. You looked up and what did you see?

"A. My brother (respondent) was standing on a barbed wire fence that I would say was about 2½ feet from the ground and the wire went by the post about 8 to 10 inches beside the pole. He had one foot on the wire and one foot on the post beside it and had both hands on the wire . . ."

On cross-examination the brother testified:

"Q. You say this line was about 7½ feet off the ground?

"A. Yes, sir.

"Q. How tall is your brother?

"A. 5′ 2″, give or take a few inches."

* * *

"Q. And you say he was standing on the top strand of the fence?

"A. Yes, sir.

"Q. He had his hands over his head, is that correct?

"A. That's correct.

"Q. And in one hand he had a wire? Which hand did he have the wire in?

"A. He had the wire in his right hand and the pliers in his left hand.

"Q. Were the pliers on the same wire or another wire?

"A. On the opposite wire.

"Q. Standing on top of the fence with his hands over his head hanging on to a wire with one hand and the pliers with the other hand.

"A. Yes, sir."

Respondent was nineteen years of age, married, and had completed the tenth grade. The evidence, viewed in the light most favorable to him, simply shows that he was injured while attempting to cut a short section from electric wires which had been left hanging from a transformer located on one of appellant's transmission poles. There is no testimony that the wire posed any danger to one merely passing by. Respondent came in contact with them only after climbing and standing on top of a nearby barbed wire fence. In doing

so, he was attempting to take the wire, which belonged to appellant, for his own use.

Respondent was an intelligent person and was charged with knowledge that contact with a wire charged with electric current is attended with danger. Under the circumstances, the fact that respondent may have not known that the electric wires were actually charged with current does not relieve him of the responsibility for intentionally coming in contact with the wire. The wire which he intentionally caught was hanging from an electric transmission line. This fact was open and apparent, and gave warning of the likelihood that the wires were charged with current. In spite of this fact, respondent stood on top of the fence and caught hold of the wire. His purposeful action in so doing constituted contributory negligence, as a matter of law, and barred him of recovery.

The judgment of the lower court is accordingly reversed and the cause remanded for entry of judgment in favor of appellant.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.