911 F.2d 721
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John Q. BULLARD, in his capacity as administrator for the
estate of Mark Eugene Bullard, Plaintiff-Appellant,
v.
BLACK RIVER ELECTRIC COOPERATIVE, Defendant-Appellee.
 No. 89-2813.
 United States Court of Appeals, Fourth Circuit.
 Argued June 4, 1990.
Decided Aug. 16, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence. Clyde H. Hamilton, District Judge. (88-3298-4-15)
 James Carlisle Rushton, III, Mary Layton Wells, The Hyman Law Firm, Florence, S.C., (argued), for appellant.
 Pope D. Johnson, III, Whaley, McCutchen, Blanton & Rhodes, Columbia, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 This appeal emerges from a claim for wrongful death from an accidental electrocution. After a three day trial, the district judge found the deceased to have been contributorily negligent as a matter of law and directed a verdict for Defendant Black River Electric Cooperative. Finding no error, we affirm.
 
 I.
 
 2
 The deceased, Mark Bullard, was riding a trail motorcycle in Manchester State Forest accompanied by three of his cousins. The testimony of the cousins reflects that they were riding single file along a very narrow trail with Mark second in line. The first rider, Steven Clark, testified that he and Mark were riding a bit ahead of the others when they encountered a cable sagging across their path. Steven ducked his head and rode under it while Mark went under by sliding his bike to the ground. Mark and Steven flagged down the other two riders before they reached the cable and then decided to string cans along the line to alert other riders. After gathering some cans, Mark reached for the wire and was frozen to it upon making contact. He never regained consciousness.
 
 
 3
 The testimony of several of the witnesses and the pictures offered as exhibits show that the bike trail ran perpendicular to a dirt road, which led to a cabin. The junction of the trail and the "road" created a clearing. The sagging power line ran parallel to the "road" on the near side of the clearing from the perspective of the oncoming bikers. Defense exhibits 4, 14, 15, 16, 17, and 18 indicate that utility poles were plainly visible from the clearing where Mark and Steven stood in the minutes before Mark came into contact with the line. The bikers testified, however, that they did not see the poles nor contemplate that the line was an electrical power line.
 
 
 4
 Investigation showed that the line had been caused to sag by a tree which had been cut down by an unidentified third party during a period between one and two weeks prior to the accident. Because the line did not actually hit the ground, the recloser did not de-energize the line. The line had been used to service a cabin which had had its service cut off. The line was disconnected from the cabin but never de-energized.
 
 II.
 
 5
 South Carolina law defines contributory negligence as
 
 
 6
 a lack of ordinary care on the part of a person injured by the negligence of another which combines and concurs with that other's negligence and contributes to the injury as a proximate cause without which the injury would not have occurred.... If, in the exercise of ordinary care, the plaintiff might have avoided the consequences of the defendant's negligence, he is the author of his own injury in the eyes of the law.
 
 
 7
 South Carolina Ins. Co. v. James C. Greene and Co., 290 S.C. 171, 177, 348 S.E.2d 617, 620 (S.C.App.1986) (citations omitted). Usually the question of contributory negligence is for the jury, unless the evidence as taken most favorably to the plaintiff could not reasonably be interpreted to show anything but contributory negligence. See, e.g., Haskins v. Fairfield Elec. Corp., 283 S.C. 229, 321 S.E.2d 185 (S.C.App.1984).
 
 
 8
 In this case, the determination that contributory negligence was the only possible finding was correct. The pictorial exhibits presented by Black River clearly indicate that electrical poles were visible in both directions up and down the road which formed the clearing in which the decedent and his cousin stood. Any attempt to observe where the cable was connected, left or right, would have indicated its connection to power poles.
 
 
 9
 Failure to exercise ordinary care results in a finding of contributory negligence. Inherent in the exercise of ordinary care is the basic use of one's senses. See Southern Maryland Elec. Coop., Inc. v. Blanchard, 239 Md. 481, 489-90, 212 A.2d 301, 307 (Md.App.1965) (" 'The law ordinarily charges a person of unimpaired vision with seeing an object, "which, if he had used his senses, he in the nature of things must have seen." ' ") (quoting Craft v. Fordson Coal Co., 114 W.Va. 295, 299, 171 S.E. 886 (1933) (citations omitted)). The exhibits indicate that any attempt to determine the origin of the cables would have shown their connection to power poles. Once establishing this connection, plaintiff had the duty to appreciate the potential danger from a sagging power line and to avoid contact with it.
 
 
 10
 Appellant's reliance upon Holmes v. Black River Elec. Coop., 274 S.C. 252, 262 S.E.2d 875 (S.C.1980), and Haskins, supra, is misplaced. The injured party in these cases did not come into intentional contact with the wire in question. This distinction is crucial. In Steele v. Lynches Elec. Coop., 259 S.C. 239, 191 S.E.2d 253 (S.C.1972), the South Carolina Supreme Court stated:
 
 
 11
 Under the circumstances, the fact that respondent may not have known that the electric wires were actually charged with current does not relieve him of the responsibility for intentionally coming in contact with the wire.
 
 
 12
 259 S.C. at 244, 191 S.E.2d at 255 (emphasis added) (plaintiff could see wire hanging from power pole).
 
 
 13
 Whether the deceased actually realized that the cable was a power line is not determinative. Under the circumstances he should have perceived the attachment of the cable to the power poles and recognized the attendant danger. The district court correctly found contributory negligence as a matter of law.
 
 III.
 
 14
 No showing was made of any willful or reckless behavior on the part of the electric cooperative which would overcome the finding of contributory negligence.
 
 
 15
 Conduct is willful, wanton, or reckless when it is committed with a deliberate intention or in such a manner or under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights.
 
 
 16
 Bryant v. Muskin Co., 873 F.2d 714, 715 (4th Cir.1989) (citations omitted) (construing South Carolina law). Given there was uncontradicted evidence (1) that a study conducted by an independent engineering firm in 1983 recommended no change in the maintenance of the line in question, (2) that inspections were performed on a regular basis, and (3) that use of a recloser on a line of this type is acceptable industry practice, recklessness or willfulness immediately pre-dating the incident would need to be shown. No such showing was made. The last inspection of the line occurred on December 28, 1986, approximately two weeks before the accident, and no problem was observed. The line was first seen sagging on January 4, 1987, but went unreported to the electric cooperative. Moreover, no other facts demonstrate that the cooperative knew or should have known of the sag in the line until after the accident involving the decedent had occurred.
 
 
 17
 AFFIRMED.