### 1532

Ann PRIEST, as Administratrix of the Estate of Gary Blackwood, Appellant v. Derrick Lamart BROWN and Berkeley Electric Cooperative, Inc., a South Carolina Corporation, Defendants, of whom Berkeley Electric Cooperative, Inc., is Respondent.

(396 S.E. (2d) 638)

Court of Appeals

---

*Arnold S. Goodstein,* of *Goodstein & Goodstein,* Summerville, and *Mary Ann Marwick,* Johns Island, *for appellant.*

*Douglas Pratt-Thomas,* of *Wise & Cole,* Charleston, and *John B. Williams,* of *Williams, Landis & Holler,* Moncks Corner, *for respondent.*

Heard June 4, 1990.

Decided Aug. 27, 1990.

SHAW, Judge:

Appellant, Ann Priest, as Administratrix of the Estate of Gary Blackwood, brought suit against respondent, Berkeley Electric Cooperative, Inc. (BEC) alleging causes of action in negligence, breach of warranty of merchantability and fitness for a particular purpose and strict liability. From an order granting summary judgment to BEC, Priest appeals. We affirm.

The facts of this case are largely undisputed. On February 7, 1988, Derrick Lamart Brown was travelling on a highway in Dorchester County when he lost control of his vehicle and hit a utility pole supporting electrical distribution lines owned and maintained by BEC. The impact snapped the "pole top pin" which attaches the wire to the pole. The unbroken wire swung down over a curve in the road and came to rest several inches above the center line, blocking the eastbound lane of traffic. The South Carolina Highway Patrol was notified of the accident and Trooper Terry Richards was dispatched to the scene. South Carolina Electric and Gas Company was also allegedly notified apparently under the belief that it owned the line. Upon arriving at the scene, Officer Richards found Derrick Lamart Brown talking with Brown's father and brother. After interviewing Brown, Officer Richards placed him under arrest for driving under the influence. The Dorchester County Sheriff's Department was contacted for assistance with traffic control and Deputy Gary Blackwood arrived at the scene.

According to the deposition testimony of Officer Richards, upon Blackwood's arrival, Officer Richards informed him he needed help getting traffic around the downed power line. Blackwood told Officer Richards he believed the line was neutral since it was not insulated and that they could move it. Officer Richards responded that he knew nothing about power lines and that SCE&G was enroute. The father and brother of the driver of the automobile also testified by way of deposition that they warned Blackwood the wire was "hot." Blackwood picked up the line to move it, and as he stepped off the road, he was electrocuted and died.

Priest contends the trial judge erred in granting summary judgment to BEC on the issue of negligence as genuine issues of material fact were presented by the record. She first argues a genuine issue exists as to whether BEC was negligent in the repair of the power pole in a similar accident which occurred six months prior to the one at hand.

The record reflects that in August 1987, another automobile struck a pole in the same location causing the pole to break and the transmission line to come loose. According to the deposition testimony of Randy Dillard, a BEC employee who worked on the pole after the August accident, the pin attaching the wire to the pole was also bent. He stated, "We had to change the pole, put a new pole up there and reframed it and put everything back up." "Framing" refers to the hardware on the pole. While Dillard agreed that his work order did not reflect whether he changed the pin, he stated that he remembered that he did, indeed, change the pin. Priest's contention that an issue of fact exists as to whether or not a new pin was installed after the August accident is without foundation. Absolutely no evidence was presented to show the same bent pin was in place on the pole on the night of the February accident. The only evidence in the record is that the pin was, in fact, replaced. Summary judgment is appropriate in those cases in which plain, palpable and undisputable facts exist on which reasonable minds cannot differ. It is not sufficient that one create an inference which is not reasonable or an issue of fact that is not genuine. *Main v. Corley*, 281 S.C. 525, 316 S.E. (2d) 406 (1984). The judge is not required to single out some one morsel of evidence and attach to it great significance when patently the evidence is introduced solely in a vain at-

tempt to create an issue of fact that is not genuine. *Id.* 316 S.E. (2d) at 407.

Priest also argues an issue of fact exists as to whether a faulty mechanical design of BEC's distribution line was the cause of Blackwood's death. She argues that, had BEC used a suspension insulator to connect the wire to the pole, the wire that electrocuted Blackwood would never have come loose.

Both Priest and BEC presented expert testimony on the matter. BEC's expert testified that the construction of the pole was in accordance with the National Electrical Safety Code (N.E.S.C.) and the Rural Electrification Administration (R.E.A.), there were no code violations, he knew of no deviations from accepted standards, he found no negligence by BEC in the design of the line, and he did not believe BEC should have installed a stronger suspension system at this location. Priest's expert, likewise, could point to no violations of the N.E.S.C. or R.E.A. Further, he admitted that he was not knowledgeable enough of the utility industry standards to give an opinion on whether there was a defect in the distribution line but, in his opinion, it was not a good design for that pole. He stated only that, based on his investigation, he felt the line could have been designed in a safer manner. We find this testimony insufficient to create a genuine issue of material fact as to BEC's negligence in the design of the line.

Priest next contends the trial judge erred in finding that, even if BEC was guilty of negligence, Blackwood was contributorily negligent and assumed the risk as a matter of law. We disagree.

The evidence clearly supports the trial judge's finding that Blackwood was contributorily negligent and assumed the risk. BEC presented testimony that Blackwood attended and completed a course at the South Carolina Criminal Justice Academy in August and September of 1986. The procedure which is taught upon encountering a downed power line is to isolate the area, notify the proper agency, and remain in the area for control of traffic and crowds. There is no indication Blackwood was taught to make his own determination of whether the wire was safe to move. Further, testimony of two witnesses indicates they informed him the wire was "hot." In spite of his training and the warning of these indi-

viduals, Blackwood attempted to remove the wire from the road.

In the case of *Steele v. Lynches River Electric Cooperative, Inc.*, 259 S.C. 239, 191 S.E. (2d) 253 (1972), the plaintiff, a nineteen year old married man with a tenth grade education, climbed on a wire fence and attempted to cut a piece of wire hanging from a transmission pole to use to restart a disabled automobile. The wires were charged with current and the plaintiff was injured. Our Supreme Court held the plaintiff was guilty of contributory negligence as a matter of law, stating:

> Respondent was an intelligent person and was charged with knowledge that contact with a wire charged with electric current is attended with danger. Under the circumstances, the fact that respondent may not have known that the electric wires were actually charged with current does not relieve him of the responsibility for intentionally coming in contact with the wire. The wire which he intentionally caught was hanging from an electric transmission line. This fact was open and apparent, and gave warning of the likelihood that the wires were charged with current. In spite of this fact, respondent stood on top of the fence and caught hold of the wire. His purposeful action in so doing constituted contributory negligence, as a matter of law, and barred him of recovery. (191 S.E. (2d) at 255).

The facts of the instant case indicate that Blackwood, too, was an intelligent person charged with knowledge of the danger imposed by a wire charged with electric current. Further, Blackwood had the added benefits of his training with the Criminal Justice Academy and the warnings of two witnesses at the scene. We therefore find, as a matter of law, Blackwood's action in attempting to remove the wire from the road constituted contributory negligence.

We further hold that Blackwood assumed the risk as a matter of law. The trial court may declare a plaintiff has assumed the risk of injury as a matter of law where it clearly appears the plaintiff had knowledge of and appreciated the danger or that the danger was so obvious or apparent that knowledge should have been imputed to him.

*Ballou v. Sigma Nu General Fraternity*, 291 S.C. 140, 352 S.E. (2d) 488 (Ct. App. 1986). We find that Blackwood was charged with both actual knowledge and apparent knowledge of the danger in coming in contact with the wire.[1]

Finally, Priest contends the trial judge erred in ruling the doctrines of strict liability and implied warranty did not apply to the case at hand. We disagree. A product can be defective because of a flaw in its design. Liability for a design defect may be based on negligence, strict tort or warranty. *Madden v. Cox*, 284 S.C. 574, 328 S.E. (2d) 108 (Ct. App. 1985). In this state, warranties implied by law are recognized by the Uniform Commercial Code and, under this code, a sale must occur before an implied warranty can arise. *Henderson v. Gould, Inc.*, 288 S.C. 261, 341 S.E. (2d) 806 (Ct. App. 1986). On the other hand, a sale need not occur in the literal sense for strict liability to apply as long as the product is injected into the stream of commerce by other means. *Id.*, 341 S.E. (2d) at 810. There is no question that no sale occurred in the present case and, thus, the doctrine of implied warranty is clearly inapplicable.

The question thus becomes whether the facts of this case will support a cause of action for strict liability. In support of its motion for summary judgment, BEC presented the uncontroverted affidavit of Henry Dupree, manager of operations and engineering for BEC. The affidavit stated that the electrical power being transmitted through the power line which was picked up by Blackwood had neither been sold nor placed into the stream of commerce, but, rather, was within the exclusive possession, ownership and control of BEC. Although such a statement appears self-serving, there is no indication in the record that Priest attempted to introduce evidence to refute this statement. The affidavit of Mr. Dupree further makes it clear that the electricity through these lines was of such a high voltage that it was not in a form immediately usable by a consumer. Indeed, the facts of this case alone suggest the electricity had not been placed into the stream of commerce by BEC.

---

[1] It should be noted that one of the witnesses indicated he informed Blackwood that his son had seen sparks.

We further note that in an action based on strict liability, the plaintiff must prove the product, as designed, was in a defective condition unreasonably dangerous to the user when it left the control of the defendant and the defect caused his injuries. *Madden*, 328 S.E. (2d) at 112. In the case of *Marchant v. Mitchell Distributing Co.*, 270 S.C. 29, 240 S.E. (2d) 511 (1977) our Supreme Court affirmed the granting of a motion for summary judgment for the defendant in an action alleging strict liability. There, the plaintiff argued a crane, absent an optional safety device, was an unreasonably dangerous defective product. The court stated:

> We think, however, that the fact the crane was without the optional safety device, does not tend to prove that it was defective. Most any product can be made more safe. Automobiles would be more safe with disc brakes and steel-belted radial tires than with ordinary brakes and ordinary tires, but this does not mean that an automobile dealer would be held to have sold a defective product merely because the most safe equipment is not installed. By a like token, a bicycle is more safe if equipped with lights and a bell, but the fact that one is not so equipped does not create the inference that the bicycle is defective and unreasonably dangerous. (240 S.E. (2d) at 513).

The court held that the plaintiff had assumed the burden of presenting evidence the crane was in a defective condition and unreasonably dangerous which proximately caused his injury and the fact the crane could have been more safe was insufficient to support a finding that the crane was unreasonably dangerous. Likewise, in the case at hand, the only evidence presented by the plaintiff was that the design of the distribution line could have been more safe. There is nothing in the record to show an unreasonably dangerous defective condition and, therefore, the grant of summary judgment on the theory of strict liability was proper.

For the foregoing reasons, the order below is

Affirmed.

CURETON, J., and LITTLEJOHN, Acting Judge, concur.