641 S.E.2d 63

The ESTATE OF Monty Austin ADAIR, by his Personal Representative, Joyce Ann Kephart–Adair, and Joyce Ann Kephart–Adair, personally, Appellant,

v.

L–J, INC., a South Carolina Corporation, and David Neal Jordan, Respondents.

No. 4201.

Court of Appeals of South Carolina.

Submitted Jan. 1, 2007.

Decided Jan. 29, 2007.

Walter Bilbro, Jr., of Charleston, for Appellant.

Elizabeth F. Bailey, Stephen E. Darling, and Anne L. Ross, all of Charleston, for Respondents.

KITTREDGE, J.:

On the night of June 8, 2001, Monty Austin Adair and three friends purchased beer at a local convenience store. The group proceeded in Adair's Jeep to a large tract of undeveloped commercial property known as the "Sand Pits" to go "mudding" (off-road driving). The Sand Pits is owned by L–J, Inc. and David Neal Jordan ("Respondents"). While on the Sand Pits, Adair decided to drive the Jeep up a steep embankment. When Adair attempted to maneuver the Jeep down the embankment, an accident occurred, resulting in Adair's death. Adair had a blood-alcohol level of .252%.

Adair's Estate brought a wrongful death suit against Respondents, claiming Respondents—as owners of the Sand Pits—were responsible for Adair's death. Respondents moved the circuit court for summary judgment, which the circuit court granted, holding Adair was a trespasser on Respondents' property. The Estate appeals. We affirm.[1]

## I.

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the circuit court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Pittman v. Grand Strand Entm't, Inc.*, 363 S.C. 531, 536, 611 S.E.2d 922, 925 (2005). On appeal, when factual matters are in dispute, all ambiguities, conclusions, and inferences arising in and from the evidence must be viewed in a light most favorable to the non-moving party. *Id.*

## II.

Before the accident at issue in this case, Respondents were unrelenting in their efforts to stop trespasser incursions onto their property. On the perimeter of the Sand Pits, Respon-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

dents posted "no trespassing signs." At the entrances to the Sand Pits, Respondents dug ditches, built berms, and erected gates. Respondents also enlisted local law enforcement to assist them in their efforts to keep trespassers off the Sand Pits. Despite these efforts, however, trespassers continued to come onto the Sand Pits to dump trash or, as in this case, go joyriding.

On the night of June 8, 2001, Adair and three friends— Mark Cook, Michael Martin, and Duane Sweat—purchased beer and entered Respondents' property to go "mudding" in Adair's Jeep. In the Sand Pits' interior, the men took a path that "grew smaller and smaller" until they encountered a steep embankment. Although Adair's friends did not think the Jeep could get up the embankment, Adair, undeterred, resolved to drive the Jeep to the top. At this point, Adair's friends got out of the Jeep and Cook illuminated the way up the embankment with a flashlight.

Adair successfully negotiated the embankment and, once there, exited the Jeep and spoke with his friends. Adair then decided to press onward, this time with Martin and Sweat as passengers. Cook walked in front of the Jeep with a flashlight. As Adair tried to maneuver the Jeep on the steep embankment, it rolled over, tumbled down the embankment, hit a tree, and caught fire. Martin and Sweat escaped, but Adair was not so fortunate; he was pinned inside the Jeep and died later that night. As noted, an analysis revealed that Adair had a blood alcohol level of .252%, a level well beyond the concentration necessary for an inference that Adair was under the influence of alcohol at the time of the accident. *See* S.C.Code Ann. § 56–5–2950(b)(3) (Supp.2001).

## III.

■ Although the Estate raises numerous issues on appeal, the determinative issue is whether Adair was a trespasser on Respondents' property. We find Adair was a trespasser as a matter of law, and affirm the circuit court's order.

## A.

■■ "South Carolina recognizes four general classifications of persons who come on premises: adult trespassers,

invitees, licensees, and children." *Sims v. Giles,* 343 S.C. 708, 715, 541 S.E.2d 857, 861 (Ct.App.2001). An adult trespasser is "a person whose presence is neither invited nor suffered" while a licensee is "a person not invited, but whose presence is suffered." *Id.*

Adair's presence on Respondents' property was neither invited nor suffered: Respondents did not give Adair permission to go "mudding" on their property nor did they suffer his presence. Although Respondents knew trespassers came onto the Sand Pits—as the area was known for off-roading and other unwelcomed activities, like trash-dumping—Respondents did everything they reasonably could to keep trespassers off their property. The record is replete with Respondents' longstanding and unrelenting efforts to keep trespassers like Adair off their property.

Respondents posted "no trespassing" signs on the perimeter of their property.[2] When Respondents learned that "no trespassing" signs had been removed, they posted new signs. Respondents also blocked off entranceways to their property with gates, ditches, and dirt berms.

Respondents also implored local law enforcement to help keep trespassers off their property. In April 2001, just a few months before Adair's death, Respondents wrote the following letter to the North Charleston Police Department:

[W]e would appreciate your staff arresting and prosecuting anyone trespassing on [the Sand Pits]. We put up ["]no trespassing["] signs approximately twice a year, and generally within one to three months they are torn down. After the signs have been placed people continue to trespass and dump debris on this property. We have also placed gates

---

**2.** It is unclear whether a "no trespassing" sign was posted on the night of Adair's death. Even assuming trespassers removed the "no trespassing" signage prior to the evening of June 8, 2001, that fact would in no manner create a *genuine* issue of material fact precluding the entry of summary judgment in this case. We recognize that whether a person's presence on the property of another is "invited" or "suffered" may often present a jury question. In this case, however, the evidence points unmistakably to one conclusion—the landowners did not invite Adair on their property nor did they suffer his presence or any other trespasser's presence. If Respondents' actions are not sufficient as a matter of law, the law would likely provide no landowner protection from such claims.

and dug ditches to try to keep people out, but as you probably know, nothing seems to help. Please let us know if we can help you in any way to keep these people and dumpers off this property.

Respondents even hired a caretaker to live on the Sand Pits for the purpose of preventing and deterring trespassers. The City of North Charleston objected, however, because the caretaker's residence violated a zoning ordinance. In a letter addressed to Respondents and dated May 10, 2001 (less than a month before Adair's death), the City of North Charleston threatened Respondents with "legal action," noting "[i]t has come to [our] attention that a letter was sent to you in 1999 advising you that no one is allowed to live on this property." Respondents' reply, dated May 15, 2001, illustrates their diligence (and exasperation) in preventing and deterring trespassers:

I don't know if you are familiar with all of the problems we have had on [the Sand Pits], such as people trespassing, dumping debris, stripping and burning stolen vehicles, joy ridding [sic] and parking on the property. This has been going on for years. Every time we put up gates and/or no trespassing signs, they are torn down. Enclosed you will find a copy of a letter to [the North Charleston Police Department] concerning the problems with this property.

At the present time, we have an employee of this company who lives on the property and acts as a caretaker of the property ... trying to keep people out. I am afraid that if this person is removed from the property the dumping and trespassing will only get worse. This is my dilemma and it's a catch 22, darn if I do and darn if I don't.

I would appreciate you advising me on what to do in this situation. I realize what the law is, but how do I keep people from dumping on my property[?] This is especially difficult, since I am [an] absentee owner[;] our office is in Columbia, S.C.

(ellipsis in original).

In light of Respondents' persistent and diligent efforts to keep trespassers from coming onto their property, the trial court correctly held that as a matter of law Respondents did

not suffer or acquiesce to the presence of trespassers on their property.[3] Adair was a trespasser as a matter of law.

■ Because Adair was a trespasser, Respondents owed him no duty except the duty not to do him willful or wanton injury. *Nettles v. Your Ice Co.*, 191 S.C. 429, 436, 4 S.E.2d 797, 799 (1939) (holding a landowner "owes no duty to a trespasser . . . except to do him no willful or wanton injury."). In a light most favorable to the Estate, there is no evidence in the record indicating Respondents willfully or wantonly tried to injure Adair or any other trespasser on their property. Accordingly, the circuit court correctly held Respondents did not breach a duty of care it owed Adair.

## B.

The balance of the Estate's assignments of error are either not prejudicial to the Estate or manifestly without merit. *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 563, 614 S.E.2d 611, 615 (2005) ("Error without prejudice does not warrant reversal."); Rule 220(b)(2), SCACR ("The Court of Appeals need not address a point which is manifestly without merit.").

## IV.

We join the circuit court in holding as a matter of law that Adair and his friends were trespassers. In the light most favorable to the Estate, the evidence demonstrates Respondents neither invited nor suffered Adair's or any other trespasser's presence on their property. In fact, the only reasonable inference that can be gleaned from the record is that Respondents persistently and diligently tried to keep trespass-

---

3. We reject the Estate's argument, citing *Jones v. Atlanta–Charlotte Air Line Railway Company*, 218 S.C. 537, 63 S.E.2d 476 (1951), that Adair was an imputed licensee rather than a trespasser. In *Jones*, the supreme court noted "the uncontradicted evidence showed that there were well defined paths leading down to and along defendant's tracks, and that for more than twenty years the public at large had been accustomed to use these paths for pedestrian purposes, with the acquiescence of the defendants." *Id.* at 541, 63 S.E.2d at 477. Here, Respondents did not in any way acquiescence to the presence of the public on their property; rather, Respondents took repeated affirmative steps to prevent the public from coming onto their property. Thus, the circuit court did not err in finding Adair was not an imputed licensee.

ers off their property. It is difficult to imagine what else Respondents could have done to deter trespassers. The order of the trial court granting Respondents' summary judgment is

**AFFIRMED.**

HEARN, C.J., and WILLIAMS, J., concur.