THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE
 STATE OF SOUTH CAROLINA
In
 The Court of Appeals

 
 
 
 
 Amy Davidson, Appellant,
 
 
 
 
 

v.

 
 
 
 City of Beaufort, Branch
 Banking & Trust of South Carolina, Collins Engineering, Inc., Brantley
 Construction Company, Inc., and Tidal Wave 23, LLC, Defendants,
 
 of whom Collins
 Engineering Inc., Brantley Construction Company, Inc., and Tidal Wave 23,
 LLC, are Respondents.
 
 
 
 Phillip Davidson, Appellant,
 
 
 
 
 

v.

 
 
 
 City of Beaufort, Branch
 Banking & Trust of South Carolina, Collins Engineering Inc., Brantley
 Construction Company, Inc., and Tidal Wave 23, LLC, Defendants,
 
 of whom Collins
 Engineering Inc., Brantley Construction Company, Inc., and Tidal Wave 23, LLC
 are Respondents.
 
 
 
 
 

Appeal
 From Beaufort County
 Honorable
 Marvin H. Dukes, III, Master-in-Equity

Unpublished
 Opinion No.  2011-UP-199
 Submitted
 April 1, 2011  Filed May 3, 2011

AFFIRMED

 
 
 
 James
 H. Moss and Kimberly L. Smith, both of Beaufort, for Appellants.
 Dawes
 Cooke, Jr. and Phillip S. Ferderigos, both of Charleston, for Respondent Tidal
 Wave 23, LLC.
 R.
 Patrick Flynn, of Charleston, for Respondent Brantley Construction Company,
 Inc.
 H.
 Michael Bowers, of Charleston, for Respondent Collins Engineers, Inc.
 Mary
 A. Lohr and William B. Harvey, both of Beaufort, for Respondent City of
 Beaufort.
 Edward
 K. Pritchard, III, of Charleston, for Respondent Branch Banking & Trust of
 South Carolina.
 
 
 

PER CURIAM:  Appellants, Amy
 Davidson and Phillip Davidson (the Davidsons), each brought separate negligence
 actions against Respondents, Tidal Wave 23, LLC (Tidal Wave), Brantley
 Construction Company, Inc. (Brantley), and Collins Engineering, Inc. (Collins)
 (collectively Respondents), after they were abducted from Tidal Wave's parking
 lot and assaulted by two men.  The City of Beaufort (the City) and Branch Banking
 & Trust of South Carolina (BB&T) were also named as Defendants in each
 action.  The
 circuit court consolidated the two actions, and the Master-in-Equity granted
 Respondents' respective summary judgment motions.  The Davidsons seek review of
 the master's order granting summary judgment.  We
 affirm.[1]
FACTS/PROCEDURAL
 HISTORY
In 2005, the
 City awarded a contract to Brantley for repairs and upgrades to the Henry C.
 Chambers Waterfront Park in downtown Beaufort, along the Beaufort River.  The
 City also hired Collins to oversee the daily construction activities to ensure
 that Brantley performed according to contract specifications.  On May 26, 2006,
 during
 the time period in which Brantley performed construction in the Waterfront Park,
 the Davidsons traveled to the City's waterfront area for the purpose of meeting with friends
 at Saltus Riverfront Bar and Grill (Saltus), located at 820 Bay Street and
 adjacent to the Waterfront Park.[2] 
 When they arrived at the waterfront area, they parked their car in a parking
 lot adjoining the office building at 706 Bay Street, owned by Tidal Wave, which
 was also adjacent to the Waterfront Park.  BB&T operated in this building
 and maintained a 24-hour ATM in the corner of the parking lot.  There was a
 "No Parking" sign at the parking lot's entrance from the Carteret
 Street side,[3] and the space that the Davidsons parked in was marked "For BB&T
 Customers Only."  It is undisputed that the Davidsons did not use BB&T's
 ATM.  
After the
 Davidsons visited Saltus, they returned to their car at approximately 1 a.m.  Tragically,
 two men attacked, carjacked, and robbed them and sexually assaulted Mrs.
 Davidson.  The Davidsons later filed these negligence actions, alleging that Respondents
 breached their duty to provide sufficient lighting and security for Tidal
 Wave's parking lot.  The Davidsons maintained that this breach proximately
 caused their abduction as well as resulting physical and mental injuries.  
The complaint
 also alleged that there were multiple signs directing the public to park in
 Tidal Wave's parking lot.  Additionally, the complaint stated that Brantley and
 Collins were on notice of a prior abduction from Tidal Wave's parking lot, and,
 therefore, they had a duty to provide lighting to the premises.  The complaint
 cited numerous other crimes committed in the waterfront area in the recent past
 due to the lack of lighting and other unspecified "dangerous
 conditions" in the construction area.  The complaint asserted that these crimes
 were "publicized and generally known to the community."  
During
 discovery, Tidal Wave served the following Requests to Admit on the Davidsons:

 1.Admit
 that Plaintiffs' presence at the BB&T parking lot on the date of the
 incident, May 26, 2006[,] did not confer any benefit on the commercial landlord
 Tidal Wave 23, LLC.
 2.Admit
 that Plaintiffs' presence at the BB&T parking lot on the date of the
 incident, May 26, 2006[,] did not confer any benefit to the commercial tenant
 BB&T.
 3.Admit
 that Plaintiffs did not use BB&T's ATM at 706 Bay Street, Beaufort, SC[,]
 on the date of loss of May 26, 2006.  
 4.  Admit
 that Plaintiffs did not intend to use BB&T's ATM at 706 Bay Street, Beaufort,
 SC[,] on the date of loss of May 26, 2006.
 5.  Admit
 that Plaintiffs are not customers of and do not conduct business with the
 commercial landlord Tidal Wave 23, LLC[,] on May 26, 2006.
 6. Admit
 that Plaintiffs are not customers of and were not transacting business with
 BB&T on May 26, 2006[,] at 706 Bay Street, Beaufort, SC.
 7. Admit
 that the "public parking" signs referred to in Plaintiffs' Complaint
 are the property of the City of Beaufort and were located on the City of
 Beaufort's real property on the date of the incident, May 26, 2006.
 8. Admit
 that the "public parking" [signs] referred to in Plaintiffs'
 Complaint were not the property of Tidal Wave 23, LLC[,] or BB&T and are
 not located on the real property of Tidal Wave 23, LLC[,] or BB&T.
 9. Admit
 that the Tidal Wave 23, LLC[,] property had a "no parking" sign at
 the entrance of Tidal Wave's parking lot upon entering the parking lot from the
 Cataret [sic] Street side.
 10. Admit
 that the Plaintiffs parked in BB&T's parking space that was marked
 "for BB&T customers only."
 11. Admit
 that the BB&T's parking lot space that the Plaintiffs parked in was held
 open to the public for BB&T customers only.
 12.  Admit
 that Plaintiffs parked in the BB&T parking lot in order to go have dinner
 and drinks at the Saltus restaurant.

The
 Davidsons did not submit a timely response to these Requests to Admit, and, therefore, they were deemed admitted pursuant to Rule 36(a), SCRCP.[4]  However,
 at the summary judgment hearing, the master asked the Davidsons' counsel
 "[A]re ya'll going to move to work that out or strike that or are they
 admitted?"  Counsel responded:  

 No,
 there are a couple that we don't admit to, namely that I believe the one that
 says the Public Parking sign is on . . . City of Beaufort property, and the
 reason for that being even in the depositions of the people from the City, we
 couldn't figure it out.  Nobody will take credit for who put the sign there or
 who, you know, who it
 belongs to. 

The master
 replied "Gotcha."  There is nothing in the record indicating that
 counsel ever filed a formal motion to withdraw these two admissions.[5]
The master
 concluded that based on their admissions, the Davidsons could not be classified
 as invitees and, therefore, there was no South Carolina precedent creating a
 duty on Respondents' part to protect the Davidsons from the criminal acts of
 third parties.  The master granted summary judgment to Respondents
 and denied the Davidsons' motion for reconsideration.  This appeal followed.  
ISSUES ON APPEAL

 1. Did the master
 properly grant summary judgment to Tidal Wave when the
 Davidsons presented no evidence that BB&T or Tidal Wave invited or gave
 consent for them to enter and use the parking lot in question?
 2. Did the master
 properly grant summary judgment to Brantley and Collins when there existed no legal
 duty on their part to the Davidsons?
 3. Did the master
 properly grant summary judgment to Respondents despite the fact that discovery
 had not yet been completed?

STANDARD
 OF REVIEW
On appeal from
 the grant of a summary judgment motion, this court applies the same standard as
 that required for the circuit court under Rule 56(c), SCRCP.  Brockbank v. Best Capital Corp.,
 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000).  Summary judgment is proper
 when there is no genuine issue as to any material fact and the moving party is
 entitled to judgment as a matter of law.  Rule 56(c), SCRCP; Adamson v. Richland Cnty. Sch. Dist. One,
 332 S.C. 121, 124, 503 S.E.2d 752, 753 (Ct. App. 1998).  "To
 determine if any genuine issues of fact exist, the evidence and all reasonable
 inferences must be viewed in the light most favorable to the [nonmoving] party."  Sauner v. Pub. Serv. Auth. of S.C., 354 S.C. 397, 404, 581 S.E.2d 161,
 165 (2003).  Further, "in cases applying the
 preponderance of the evidence burden of proof, the [nonmoving] party is only
 required to submit a mere scintilla of evidence in order to withstand a motion
 for summary judgment."  Hancock
 v. Mid-South Mgmt., Inc., 381 S.C. 326, 330, 673 S.E.2d
 801, 803 (2009). 
"The
 purpose of summary judgment is to expedite disposition of cases [that] do not
 require the services of a fact finder."  George v. Fabri, 345 S.C. 440,
 452, 548 S.E.2d 868, 874 (2001). "Summary
 judgment is appropriate in those cases in which plain, palpable and
 undisputable facts exist on which reasonable minds cannot differ."  Priest
 v. Brown, 302 S.C. 405, 408, 396 S.E.2d 638, 639 (Ct. App. 1990).  "It is not sufficient that one create an inference [that] is not
 reasonable or an issue of fact that is not genuine."  Id.  
Once
 the moving party meets the initial burden of showing an absence of evidentiary
 support for the opponent's case, the opponent cannot simply rest on mere
 allegations or denials contained in the pleadings but must come forward with
 specific facts showing there is a genuine issue for trial.  Rule 56(e),
 SCRCP; Boone v. Sunbelt Newspapers, Inc., 347 S.C. 571, 579, 556 S.E.2d 732, 736 (Ct. App. 2001). 
 Specifically, Rule 56(e) states in pertinent part:  

 When a motion for summary judgment is made and supported as
 provided in this rule, an adverse party may not rest upon the mere allegations
 or denials of his pleading, but his response, by affidavits or as otherwise
 provided in this rule,[6] must set forth specific facts showing that there is a genuine issue for trial.  If
 he does not so respond, summary judgment, if appropriate, shall be entered
 against him.

(emphasis
 added).
If
 the party opposing summary judgment asserts he or she cannot present by
 affidavit facts justifying opposition, he must set forth this belief and the
 reasons for this belief in an affidavit for the trial court's review.  Rule
 56(f), SCRCP.  Specifically, Rule 56(f) states the following:

 Should it appear from the affidavits of a party opposing
 the motion that he cannot for reasons stated present by affidavit facts
 essential to justify his opposition, the court may refuse the application for
 judgment or may order a continuance to permit affidavits to be obtained or
 depositions to be taken or discovery to be had or may make such order as is
 just.

(emphasis
 added).  In other words, to obtain the benefit of Rule 56(f), a party must file
 an affidavit setting forth the reasons that he is unable to "present
 by affidavit facts essential to justify his opposition."  See Doe ex rel. Doe v. Batson, 345 S.C. 316, 321, 548 S.E.2d 854,
 857 (2001) ("Rule 56(f) requires the
 party opposing summary judgment to at least present affidavits explaining why he
 needs more time for discovery.").
"Where
 the plaintiff relies solely upon the pleadings, files no counter-affidavits,
 and makes no factual showing in opposition to a motion for summary judgment,
 the lower court is required under Rule 56, to
 grant summary judgment, if, under the facts presented by the defendant, he was
 entitled to judgment as a matter of law."  Humana Hospital-Bayside v.
 Lightle, 305 S.C. 214, 216, 407 S.E.2d 637, 638 (1991).  "[T]his
 court ordinarily will not consider statements of fact presented only in an
 attorney's argument in determining whether a genuine issue of material fact
 exists sufficient to preclude summary judgment."  West v. Gladney,
 341 S.C. 127, 135, 533 S.E.2d 334, 338 (Ct. App. 2000).
LAW/ANALYSIS
I.   Tidal
 Wave
The
 Davidsons maintain that the master erred in granting summary judgment to Tidal
 Wave because there existed genuine issues of material fact regarding who was
 responsible for lighting the parking lot and whether the Davidsons were
 invitees, licensees, or trespassers on the property.  We disagree.
"South
 Carolina recognizes four general classifications of persons who come on
 premises: adult trespassers, invitees, licensees, and
 children."  Estate of Adair v. L-J, Inc., 372 S.C. 154, 157-58, 641
 S.E.2d 63, 65 (Ct. App. 2007) (internal citation and quotation marks
 omitted).  The highest duty of care is that owed to an invitee, who enters the
 property at the express or implied invitation of the property owner.  Hoover
 v. Broome, 324 S.C. 531, 535, 479 S.E.2d 62, 64 (Ct. App. 1996). 
 There are two types of invitees:  (1) a public invitee, who is
 invited to enter or remain on land as a member of the public for a purpose for
 which the land is held open to the public; and (2) a business visitor, who is
 invited to enter or remain on land for a purpose connected with business
 dealings with the possessor of the land.  Id. at
 536, 479 S.E.2d at 65.  The duty owed to invitees is to take reasonable care to
 protect them from dangerous conditions.  Id.  
A landowner
 has a lesser duty of care to a licensee, who is privileged to enter upon land
 by virtue of the possessor's consent.  Neil v. Byrum,
 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986).  The
 possessor is under no obligation to exercise care to make the premises safe for
 the licensee's reception, and is under no duty toward him except:

 (a) To use reasonable care to discover him and avoid injury to him
 in carrying on activities upon the land.
 (b) To use reasonable care to warn him of any concealed
 dangerous conditions or activities which are known to the possessor, or of
 any change in the condition of the premises which may be dangerous to him, and
 which he may reasonably be expected to discover.

Id.  
A
 landowner's lowest duty of care is toward an adult trespasser, "whose
 presence is neither invited nor suffered[.]"  Estate of Adair, 372
 S.C. at 158, 641 S.E.2d at 65 (internal citation and quotation marks omitted). 
 A landowner owes no duty to a trespasser except the duty not to do him willful
 or wanton injury.  Estate of Adair, 372 S.C. at 160, 641 S.E.2d at 66. 
Here,
 the Davidsons alleged in their complaint that that there existed multiple signs
 directing the public to park in the BB&T parking lot.  They argue that by
 virtue of these purported signs, they were public invitees.  However, they did not
 submit affidavits or any other evidence at the summary judgment hearing to
 support this allegation.[7]  The depositions, answers to interrogatories, and admissions
 included in the Record on Appeal are devoid of any evidence that Tidal Wave or
 BB&T posted signs directing the public to park in the BB&T parking lot
 or that the Davidsons were otherwise invited into the parking lot.  Rather, the
 record contains admissions by the Davidsons that the alleged signs belonged to
 the City and were located on the City's property, and it is questionable
 whether the master allowed the Davidsons to withdraw these admissions.  
Further,
 the Davidsons presented no evidence that BB&T or Tidal Wave gave consent
 for them to enter and use the parking lot in question.  Hence, there was no
 evidence that the Davidsons enjoyed the status of licensees.  See Estate
 of Adair, 372 S.C. at 158, 641 S.E.2d at 65 (stating that a licensee is a
 person not invited but whose presence is suffered).  In
 fact, the Davidsons admitted that there was a "No Parking" sign at
 the parking lot entrance from Carteret Street and that the space they parked in
 was marked "For BB&T Customers Only."      
In
 sum, the Davidsons failed to present even a scintilla of evidence showing their
 status as invitees or licensees.  Therefore, the only duty BB&T or Tidal
 Wave had toward the Davidsons as trespassers was the duty not to do them
 willful or wanton injury.  See id., 372 S.C. at 160, 641
 S.E.2d at 66 (indicating that a landowner owes no duty to a trespasser
 except the duty not to do him willful or wanton injury). 
 There is no evidence in the record showing that Tidal Wave or BB&T willfully
 or wantonly injured the Davidsons.
Based on the
 foregoing, the master properly granted summary judgment to Tidal Wave.  See Rule
 56(c), SCRCP (providing that summary judgment must be granted "if the pleadings,
 depositions, answers to interrogatories, and admissions on file, together with
 the affidavits, if any, show that there is no genuine issue as to any material
 fact and that the moving party is entitled to a judgment as a matter of
 law").
II.  Brantley
 and Collins
The Davidsons
 assert that the master erred in granting summary judgment to Brantley and
 Collins because there was a genuine issue of material fact regarding whether
 Brantley or Collins was responsible for maintaining the safety of the area
 surrounding
 the construction site at the Waterfront Park.[8]  We disagree. 
To establish a negligence claim, a plaintiff must show: (1) a duty of care owed by defendant to plaintiff; (2) breach of
 that duty; and (3) damages proximately resulting from the breach.  Fowler v. Hunter, 388 S.C. 355, 361, 697 S.E.2d 531, 534 (2010).  "Generally, there is no common law duty to act."  Jensen v. Anderson Cnty. Dep't of Soc. Servs., 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991).  "An affirmative legal duty, however, may be created by statute,
 contract relationship, status, property interest, or some other special
 circumstance."  Id.       
Here, any
 activities undertaken by Brantley or Collins that could have possibly affected
 any adjacent property (such as the BB&T parking lot) are irrelevant because
 the Davidsons presented no evidence to establish their status as invitees on
 the parking lot or to show any special relationship between themselves and
 Brantley or Collins.  See Gauld v. O'Shaugnessy Realty
 Co., 380 S.C. 548, 559, 671 S.E.2d 79, 85 (Ct. App. 2008) ("A
 complete failure of proof concerning an essential element of the [nonmoving]
 party's case necessarily renders all other facts immaterial.") (internal
 citation and quotation marks omitted).    
Further, the
 Davidsons cite no statute imposing a duty on Brantley or Collins to protect
 them.  Moreover, the City's contractual relationships with Brantley and Collins
 do not contemplate any third party beneficiaries.  The City's contractual
 relationship with Brantley merely requires it to take reasonable steps to avoid
 harm to persons on the construction site resulting from any construction
 activities.  No provision of the contract requires Brantley to protect
 trespassers on adjacent property from the criminal acts of third parties.  Likewise,
 no provision of the City's contract with Collins requires such protection.  
Based on the
 foregoing, Brantley and Collins were entitled to judgment as a matter of law. 
 Therefore, the master properly granted summary judgment to them.
III.  Discovery
The Davidsons
 maintain that the master erred in granting summary judgment to Respondents when
 discovery had not yet been completed.  We disagree.
"A
 complete failure of proof concerning an essential element of the [nonmoving]
 party's case necessarily renders all other facts immaterial."  Gauld,
 380 S.C. at 559, 671 S.E.2d at 85 (internal citation and quotation marks
 omitted).  Therefore, "the nonmoving party must demonstrate the
 likelihood that further discovery will uncover additional relevant evidence and that the party is not merely engaged in a fishing expedition."  Dawkins v. Fields, 354 S.C. 58, 69, 580
 S.E.2d 433, 439 (2003) (internal citation and quotation marks
 omitted) (emphasis added).  
The
 Davidsons assert that numerous depositions were required to gather evidence on
 the following issues:  (1) how the BB&T parking lot was "held open to
 the public;" (2) lighting in the parking lot; and (3) who was responsible
 for lighting.  They also argue that they were prevented from completing
 discovery on these topics, including giving their own depositions, by the
 circuit court's August 3, 2007 order staying their action pending the
 conclusion of the criminal investigation of the abduction.  However, this order
 clearly states "[D]iscovery shall proceed to the degree possible without
 the disclosure of the subject criminal file."  Further, the circuit court
 issued another order on March 26, 2008, to clarify the intent of its August 3,
 2007 order.  In the March 26, 2008 order, the circuit court ruled that the
 earlier order staying the action did not preclude the master from hearing
 dispositive motions.    
Therefore,
 nothing precluded the Davidsons from submitting their own affidavits to support
 their allegation that Tidal Wave or BB&T invited them into the BB&T parking
 lot.  Because the Davidsons failed to submit any evidence supporting this
 essential element of their negligence claim when they had the opportunity to do
 so, all other facts in the case were immaterial at that point, and further
 discovery would have been useless.  See Dawkins, 354
 S.C. at 69, 580 S.E.2d at 439 (holding that the nonmoving party must
 show a likelihood that further discovery will uncover additional relevant
 evidence); Gauld, 380 S.C. at 559, 671 S.E.2d at 85 (holding that a
 failure of proof on an essential element of the case renders all other facts
 immaterial).
CONCLUSION
Accordingly, the
 master's order is 
AFFIRMED.
WILLIAMS,
 GEATHERS, and LOCKEMY, JJ., concur.  

[1] We
 decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The Davidsons were
 Charleston residents.  
[3] Carteret Street is perpendicular to and intersects with Bay
 Street, as shown in the site plan attached to the City's contract with
 Collins.  
[4] Rule
 36(a),
 SCRCP,
 states in pertinent part:  "The
 matter is admitted unless, within 30 days after service of the request . . . the
 party to whom the request is directed serves upon the party requesting the
 admission a written answer or objection addressed to the matter, signed by the
 party or by his attorney . . . ."  
[5] See Rule 36(b),
 SCRCP ("Any matter admitted under this rule is conclusively established unless
 the court on motion permits withdrawal or amendment of the admission.").
[6] Subsections (c)
 and (e) of Rule 56 allow the parties to supplement or oppose affidavits with
 depositions, answers to interrogatories, and admissions on file. 
[7] At a prior
 hearing on a motion to dismiss filed by Tidal Wave and BB&T, counsel
 submitted photographs, which were taken a few weeks after the abduction, purporting
 to depict the alleged public parking signs.  Counsel also briefly questioned a
 city employee in his deposition about two photographs of the purported signs. 
 Yet, the employee did not indicate to whom the signs belonged or where they
 were located, despite counsel's prompting.  Curiously, counsel did not submit
 these photographs to the master at the summary judgment hearing.  But even
 assuming these photographs could be considered part of the record before the
 master, the Davidsons did not include the photographs in the Record on Appeal. 
 Therefore, we are unable to consider them.  See Rule 210(h), SCACR
 ("Except as provided by Rule 212 [Supplemental Record] and Rule
 208(b)(1)(C) and (2) [Statement of the Case], the appellate court will not
 consider any fact which does not appear in the Record on Appeal."); Germain v. Nichol, 278
 S.C. 508, 509, 299 S.E.2d 335, 335 (1983) ("Appellant has the burden of providing this Court with a
 sufficient record upon which this Court can make its decision.").
[8] The Davidsons
 alleged that Brantley disconnected the electricity to the lighting for the
 BB&T parking lot.  There is deposition
 testimony in
 the record indicating
 that Brantley disconnected electricity to certain power feeds in the Waterfront
 Park so that it could "rework" all of the lighting pursuant to its contract with the City. 
 However, it was required to do so to prevent any electrical shortages or shocks
 to anyone.  Additionally, there was testimony that Brantley did not disconnect
 any lighting outside the project's perimeter.